IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| LINDA VALENTINE DITORLIO,   )<br>                                                            )<br>         Plaintiff,                               )<br>                                                            )<br>     v.                                               )<br>                                                            )<br> SOUTHERN CREDIT ADJUSTERS, INC.  )<br> and EQUIFAX INFORMATION            )<br> SERVICES LLC,                              )<br>                                                            )<br>         Defendants.                         )  | **COMPLAINT** |

**NOW COMES** Linda Valentine DiTrolio ("Plaintiff"), through counsel, alleging the following upon information and belief:

## NATURE OF THE CASE

1. Plaintiff brings this consumer debt collection and credit reporting action against Southern Credit Adjusters, Inc. ("Credit Adjusters") and Equifax Information Services LLC ("Equifax") (collectively "Defendants") for, among other things, misattributing a debt to Plaintiff and failing to reasonably investigate her disputes regarding the same in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1962, *et seq.* ("FDCPA"), the North Carolina Collection Agency Act, N.C.G.S. §75-50, *et seq.* ("NCCAA"), and/or the North Carolina Debt Collection Act, N.C.G.S. §58-70, *et seq.* ("NCDCA").

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is conferred by 28 U.S.C. § 1331 and supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the

events or omissions giving rise to the claims asserted herein occurred in Iredell County.

**PARTIES**

4. Plaintiff is a citizen and resident of Iredell County, North Carolina and is not an infant, incompetent, nor on active duty in the military service of the United States. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Credit Adjusters has and continues to furnish information about Plaintiff to the consumer reporting agencies and is therefore a "furnisher" subject to the requirements of 15 U.S.C. § 1681s-2(b).

6. Credit Adjusters is regularly engaged in the business of collecting debt in the State of North Carolina, in that its principal business consists of purchasing defaulted debts for collection and/or collecting debts owed to third-parties.

7. Defendant Equifax Information Services LLC ("Equifax") is a limited liability company organized and existing under the laws of the State of Georgia with a registered office in Raleigh, North Carolina.

8. Equifax is a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681(f) and is regularly engaged in the for-profit business of assembling, evaluating, and disbursing information concerning consumers.

9. Defendant Credit Adjusters is a corporation organized and existing under the laws of the State of North Carolina with a principal office in Rocky Mount, North Carolina.

10. Defendants' employees, affiliates, directors, agents, and attorneys act under their direction and supervision, and, therefore, are responsible and/or vicariously liable for the actions of their employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theories of *respondeat superior,* actual or apparent agency*,* and/or the aided-in-the-agency-relation rule*.*

2

Case 5:19-cv-00015-FDW-DCK     Document 1     Filed 02/08/19     Page 2 of 17

## CHRONOLOGY

11. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

12. On or about October 3, 2016, Credit Adjusters sent correspondence to Plaintiff notifying her that, among other things, her husband's account with Miller General Dentistry ("Account") had been placed with them for collections and demanding payment of $195.00 ("Initial Communication").

13. Upon information and belief, the Account balance arose from alleged rescheduling fees incurred by Plaintiff's husband and not for medical services.

14. On or about October 27, 2016, Plaintiff contacted Credit Adjusters to dispute her liability for the Account and an agent of Credit Adjusters advised that they would contact Miller General Dentistry to investigate Plaintiff's disputed liability.

15. In 2016, a representative of Miller General Dentistry informed Plaintiff that the Account was attributed to her because her name was on checks that were previously submitted to Miller General Dentistry for payment of unrelated invoices.

16. On or about May 9, 2017, Plaintiff wrote to Equifax, Experian, and Trans Union (collectively, "consumer reporting agencies" or "CRAs") disputing liability for the Account ("First Disputes").

17. Upon information and belief, the CRAs received the First Disputes and forwarded them, along with all relevant information, to Credit Adjusters for investigation.

18. Upon information and belief, Credit Adjusters received the First Disputes, along with all relevant information, but negligently, recklessly, or willfully failed to conduct reasonable investigations by, among other things (including facts that are only known to Credit Adjusters at this time), failing to reconcile the disputed information with account level records and

otherwise verifying unsubstantiated inaccurate information.

19. Upon information and belief, Equifax responded to the First Dispute in or about May 2017 and indicated that it had purportedly verified that the Account belonged to Plaintiff.

20. Upon information and belief, Equifax had reason to believe Credit Adjusters' data was unreliable yet negligently, recklessly, or willfully adopted Credit Adjusters' investigative conclusions without conducting an independent and reasonable investigation into the First Dispute.

21. On or after July 13, 2018, Plaintiff obtained a copy of her consumer report and discovered that Credit Adjusters had obtained her consumer report without a permissible purpose on one or more occasions.

22. Plaintiff never authorized Credit Adjusters to obtain her consumer report, no court order or subpoena authorized Credit Adjusters to obtain her consumer report, Plaintiff never initiated a transaction with Credit Adjusters, never had an account with Credit Adjusters, never applied for employment with Credit Adjusters, Credit Adjusters does not extend firm offers of credit or insurance in the ordinary course of business, and no other permissible purpose exists which would have otherwise permitted Credit Adjusters to obtain Plaintiff's consumer report and access the confidential information contained therein in violation of Plaintiff's substantive privacy rights under the FCRA.

23. Credit Adjusters' impermissible acquisition and/or use of Plaintiff's consumer report was negligent, reckless, or willful because, among other things, Credit Adjusters knew or should have known that the Account was not attributable to Plaintiff based upon its internal records.

24. On or about July 30, 2018, Plaintiff wrote to Credit Adjusters requesting validation of the Account pursuant to Section 1692g of the Fair Debt Collection Practices Act ("Debt Validation

4

Case 5:19-cv-00015-FDW-DCK    Document 1    Filed 02/08/19    Page 4 of 17

Request").

25. The Debt Validation Request, among other things, requested that Credit Adjusters provide evidence that the Account was properly attributed to Plaintiff, enclosed an annotated copy of Credit Adjusters' Initial Communication showing that the Account was not properly attributed to Plaintiff, and notified Credit Adjusters that the inaccurate attribution was reported to consumer reporting agencies.

26. On or about August 2, 2018, Credit Adjusters responded to the Debt Validation Request by providing the following table of information:

| Creditor | Account # | Regarding | Amt Owed | Serv Date |
|---|---|---|---|---|
| Miller General Dentistry | 1442 | Steven DiTrolio | $195.00 | 7/29/14 |

27. Additionally, Credit Adjusters' response to the Debt Validation Request enclosed (1) a copy of the Initial Communication reflecting that the Account was "Regarding: Steven DiTrolio," (2) a partial copy of Plaintiff's General Consent Form wherein Plaintiff agreed "to be responsible for full payment of all charges for dental services performed on [Plaintiff]," and (3) an itemized billing statement showing that the Account did not pertain to dental services performed on Plaintiff.

28. Rather than substantiating Credit Adjusters' conclusion that her husband's Account was accurately attributed to Plaintiff, the records categorically contradict that conclusion. Nonetheless, Credit Adjusters willfully continued asserting that the Account was accurately attributed to Plaintiff in the absence of substantiating records.

29. On or about August 18, 2018, Plaintiff was notified by North Carolina Farm Bureau Insurance Group that her auto insurance premiums were adversely affected by, *inter alia*, the presence of a collection account. Upon information and belief, the only active collection account in

Plaintiff's consumer files at that time was the Account reported by Credit Adjusters.

30. On or about September 12, 2018, Plaintiff submitted another dispute to Equifax regarding the misattribution of the Account ("Second Dispute") and enclosed all records provided by Credit Adjusters in response to the Debt Validation Request therewith.

31. Plaintiff incurred out of pocket expenses in connection with the Second Dispute that would not have been necessary but for Defendants' failures to reasonably investigate the First Disputes.

32. Upon information and belief, Equifax received the Second Dispute and forwarded it, along with all relevant information, to Credit Adjusters.

33. Upon information and belief, Credit Adjusters received the Second Dispute, along with all relevant information, but negligently, recklessly, or willfully failed to conduct a reasonable investigation by, among other things (including facts that are only known to Credit Adjusters at this time), failing to reconcile the disputed information with account level records and otherwise verifying unsubstantiated inaccurate information.

34. On or about October 10, 2018, Equifax responded to the Second Dispute and indicated that it had "verified that [the Account] belongs to [Plaintiff]."

35. Upon information and belief, Equifax had reason to believe Credit Adjusters' data was unreliable yet negligently, recklessly, or willfully adopted Credit Adjusters' investigative conclusions without conducting an independent and reasonable investigation into the Second Dispute.

36. The Defendants are hereby notified that the subject matter of this complaint includes all disputes regarding the Account submitted by Plaintiff to consumer reporting agencies within the two year period preceding the commencement of this litigation ("Credit Disputes") as well as all attempts to collect the Account from Plaintiff during the previous four years (under the

6

Case 5:19-cv-00015-FDW-DCK    Document 1    Filed 02/08/19    Page 6 of 17

NCDCA) the previous three years (under the NCCAA), and the previous year (under the FDCPA).

37. As a result of the foregoing, Plaintiff has suffered pecuniary and non-pecuniary harms including out-of-pocket expenses, humiliation, reputational harm, adverse action based upon inaccurate information in her consumer report, and emotional distress (including stress, frustration, and anxiety) to be substantiated through testimonial or other admissible evidence.

38. SPOLIATION NOTICE TO DEFENDANTS: You are hereby reminded of your duty to preserve records pertaining to Plaintiff and the claims raised herein, including, but not limited to, (1) copies of consumer reports or other evidence of the content of Plaintiff's credit file during the previous two years, (2) records or recordings of communications regarding Plaintiff or the Account, (3) records of actions taken or not taken with regard to Plaintiff or the Account, (4) records and reports available through e-OSCAR regarding Plaintiff, the Account, or Credit Adjusters, and (5) any other records or information that may otherwise become unavailable during the course of litigation.

**FAILURE TO REASONABLY INVESTIGATE PLAINTIFF'S DISPUTES**

39. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

40. Upon information and belief, Equifax negligently, recklessly, or willfully conducted unreasonably superficial investigations into the each of the Credit Disputes it received from Plaintiff by, *inter alia*, failing to review and consider all information provided by Plaintiff and adopting the "Automated Consumer Dispute Verification" responses from Credit Adjusters without considering evidence that Credit Adjusters' data was unreliable.

41. Upon information and belief, Credit Adjusters failed to conduct reasonable investigations upon receipt of Plaintiff's Credit Disputes from consumer reporting agencies by, *inter alia*, failing

to review all information provided thereby in connection with the Credit Disputes, failing to research account level documentation, verifying the disputed attribution without a sound basis, and failing to take into account the clear evidence provided by Plaintiff in connection with the Credit Disputes.

42. Had Defendants performed reasonable investigations and reviewed all relevant information submitted in connection with Plaintiff's Credit Disputes, the misattribution would have been discovered to be inaccurate (or at the very least unverifiable) and would have been removed before causing further damage to Plaintiff.

43. However, the Account remains on Plaintiff's Equifax consumer report to this day and continues to cause her embarrassment, frustration, anxiety, and other forms of emotional distress as the risk of lost opportunities in the consumer credit, housing, employment, and insurance markets persists.

44. On information and belief, Defendants willfully adopted policies and procedures for investigating consumer disputes that created an unreasonable risk of violating Plaintiff's rights under the FCRA by, *inter alia*, validating disputed data in the face of inconclusive or contradictory data, rubberstamping furnisher data without evaluating its reliability, failing to properly train and supervise investigative agents, failing to address systematic flaws in their investigative procedures identified by the Fourth Circuit in *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004) and progeny, failing to take corrective action in response to previous lawsuits, ignoring clear statutory and regulatory guidance, and such other evidence as is revealed during the course of discovery.

45. Moreover, the Defendants' acted in reckless disregard for Plaintiff's rights under the FCRA by verifying inaccurate information in the absence of evidence sufficient to validate that

information and by ignoring evidence which showed that their source information was unreliable.

46. As a result of the foregoing, Plaintiff has suffered pecuniary and non-pecuniary harms including out-of-pocket expenses, humiliation, reputational harm, adverse action based upon inaccurate information in her consumer report, and emotional distress (including stress, frustration, and anxiety) to be substantiated through testimonial or other admissible evidence.

## **IMPERMISSIBLE USE OF PLAINTIFF'S CREDIT REPORT**

47. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

48. Credit Adjusters is a "user" of consumer reports as that term is used within the FCRA.

49. Credit Adjusters obtained one or more consumer reports pertaining to Plaintiff within the previous five years which Plaintiff became aware of during the previous two years.

50. Credit Adjusters has never had a permissible purpose under the FCRA to obtain a consumer report pertaining to Plaintiff.

51. Upon information and belief, Credit Adjusters obtained one or more consumer reports pertaining to plaintiff for the purported purpose of an "account review" in connection with the Account.

52. Credit Adjusters did not have a reasonable basis to believe that Plaintiff was liable for the Account and therefore did not have a reasonable basis to believe that it had a permissible purpose to obtain Plaintiff's consumer report.

53. Credit Adjusters impermissible acquisition of Plaintiff's consumer report was negligent, reckless, or willful in that, among other things, Credit Adjusters knew or should have known that Plaintiff was not liable for the Account and, therefore, there was no basis to obtain Plaintiff's consumer report for purposes of an "account review."

54. As a result of the foregoing, Credit Adjusters obtained confidential information about Plaintiff in violation of her substantive privacy rights afforded by Sections 1681b and q of the FCRA.

## UNLAWFUL ATTEMPTS TO COLLECT DEBT

55. The Account is a consumer "debt" within the meaning of the FDCPA, the NCCAA, and the NCDCA in that it was purportedly incurred by Plaintiff for personal, family, or household purposes.

56. Plaintiff is a "consumer" within the meaning of the FDCPA, the NCCAA, and the NCDCA in that she is a natural person allegedly obligated to pay the Account.

57. Credit Adjusters is a "collection agency" regulated by the NCCAA in that it is engaged in debt collection from consumers in the State of North Carolina and (1) procures listings of delinquent debtors from creditors and receives a benefit from collections made on the listing, or (2) is engaged in the business of purchasing delinquent or charged-off consumer debt for collection purposes; alternatively, Credit Adjusters' collection activity is regulated by the NCDCA.

58. Credit Adjusters is a "debt collector" regulated by the FDCPA in that it (1) uses instrumentalities of interstate commerce for the principal purpose of collecting debts, or (2) regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

59. Plaintiff is not obligated to pay the Account as evidenced by, among other things, Credit Adjusters' response to the Debt Validation Request.

60. Nonetheless, Credit Adjusters continues to misattribute the Account to Plaintiff despite her repeated disputes.

61. Each communication from Credit Adjusters to Plaintiff attempting to collect the Account misrepresented the character, amount, or legal status of the Debt in violation of Plaintiff's

substantive rights under the FDCPA, NCCAA, and/or NCDCA.

62. As a result of the foregoing, Plaintiff has suffered pecuniary and non-pecuniary harms including out-of-pocket expenses and emotional distress (including stress, frustration, and anxiety) to be substantiated through testimonial or other admissible evidence.

## COUNT I
**(Equifax's Violations of the FCRA)**

63. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

64. 15 U.S.C. § 1681n expressly creates civil liability under the FCRA for willful noncompliance with any requirement imposed by the FCRA with respect to any consumer.

65. 15 U.S.C. § 1681o expressly creates civil liability under the FCRA for negligent noncompliance with any requirement imposed by the FCRA with respect to any consumer.

66. Based upon the foregoing factual allegations, the Credit Bureaus are liable to Plaintiff for negligently, recklessly, or willfully violating the following requirements of the FCRA:

   a. Failing to conduct reasonable reinvestigations to determine whether the disputed Account was in fact accurate, complete, and verifiable or delete it from Plaintiff's credit file pursuant to 15 U.S.C. § 1681(a)(1);

   b. Failing to review and consider all relevant information submitted by Plaintiff pursuant to 15 U.S.C. §1681i(a)(4);

   c. Failing to promptly delete the disputed Account from Plaintiff's credit file upon a lawful reinvestigation pursuant to 15 U.S.C. §1681i(a)(5)(A); and,

   d. Such further violations as may be determined through discovery and at trial.

67. Upon information and belief, the Equifax failed to conduct any independent investigation into Plaintiff's Credit Disputes and merely rubberstamped Credit Adjusters' "Automated Consumer Dispute Verification" responses – despite having reason to doubt the reliability of

Credit Adjusters' data (including the documentation enclosed with Plaintiff's disputes.

68. Upon information and belief, Equifax's violations occurred despite decades of legal challenges to similar perfunctory "investigations"—and did so with knowledge that its investigation procedures created an unjustifiably high risk of violating Plaintiff's rights under 15 U.S.C. § 1681i.

69. Upon information and belief, Equifax failed to take appropriate remedial actions in response to similar lawsuits challenging the reasonableness of its perfunctory dispute processing procedures which led to the current litigation.

70. Upon information and belief, Equifax derives pecuniary gain and competitive advantages from conducting perfunctory investigations at the expense of the accuracy and integrity of consumer information furnished or reported thereby.

71. As a result, Plaintiff has suffered pecuniary and non-pecuniary harms including out-of-pocket expenses, humiliation, reputational harm, adverse action based upon inaccurate information in her consumer report, and emotional distress (including stress, frustration, and anxiety) to be substantiated through testimonial or other admissible evidence.

72. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Equifax pursuant to 15 U.S.C. § 1681n and/or § 1681o.

73. Because Equifax's violations were reckless or willful, Plaintiff is also entitled to recover punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

## COUNT II
**(Credit Adjusters' Violations of the FCRA)**

74. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

75. Based upon the foregoing factual allegations, Defendant Credit Adjusters is liable to Plaintiff for negligently, recklessly, or willfully violating the following requirements of the FCRA:

a. Failing to conduct a reasonable investigation in response to Plaintiff's Dispute in violation of 15 U.S.C. § 1681s-2(b);

b. Failing to review all relevant information within its own records or otherwise provided by Plaintiff or the consumer reporting agencies in connection with Plaintiff's Credit Disputes in violation of 15 U.S.C. § 1681s-2(b);

c. Failing to promptly modify, delete, or permanently block the reporting of information disputed by Plaintiff which was found to be inaccurate, incomplete, or unverifiable in violation of 15 U.S.C. § 1681s-2(b);

d. Obtaining Plaintiff's consumer report without an authorized purpose or under false pretenses in violation of 15 U.S.C. §§ 1681b or q; and,

e. Such further violations as may be determined through discovery and at trial.

76. Upon information and belief, Credit Adjusters failed to follow the guidance set forth in *Johnson v. MBNA* in conducting its investigations by, among other things, ignoring relevant information in account level records or otherwise failing to take reasonable steps to substantiate the disputed Account attribution.

77. Upon information and belief, Credit Adjusters failed to properly train and supervise its investigative agents regarding dispute handling procedures.

78. As a result, Plaintiff has suffered pecuniary and non-pecuniary harms including out-of-pocket expenses, humiliation, reputational harm, and adverse action based upon inaccurate information in her consumer report, emotional distress (including stress, frustration, and anxiety) to be substantiated through testimonial or other admissible evidence.

79. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Credit Adjusters pursuant to 15 U.S.C. § 1681n and/or § 1681o.

80. Because Credit Adjusters' violations were reckless or willful, Plaintiff is also entitled to recover punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

## COUNT III
**(Credit Adjusters' Violations of the FDCPA)**

81. The foregoing allegations are incorporated by reference and realleged herein.

82. Plaintiff is a "consumer," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

83. Credit Adjusters is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692a(6).

84. Credit Adjusters has attempted to collect Debt in violation of 15 U.S.C. § 1692d, in that it has, *inter alia*, engaged in annoying, abusive, and harassing conduct towards Plaintiff in connection with the collection of the Debt.

85. Credit Adjusters has attempted collect debt in violation of 15 U.S.C. § 1692e, in that it has, *inter alia*, falsely represented the character, amount, or legal status of the Debt.

86. Credit Adjusters has attempted to collect debt in violation of 15 U.S.C. § 1692f in that it has, *inter alia*, collected or attempted to collect from Plaintiff charges, fees, or expenses to which it was not legally entitled.

87. As a result of the foregoing, Plaintiff has suffered pecuniary and non-pecuniary harms including out-of-pocket expenses, humiliation, and emotional distress (including stress, frustration, and anxiety) to be substantiated through testimonial or other admissible evidence.

88. As a result of Credit Adjusters' unlawful attempts to collect the Debt, Plaintiff is entitled to actual and statutory damages, as well as her reasonable attorneys' fees in an amount to be proven at trial.

## COUNT IV
**(Credit Adjusters' Violations of the NCCAA)**

89. The foregoing allegations are incorporated by reference and realleged herein.

90. Credit Adjusters is a "debt collection agency," as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

91. Plaintiff is a "consumer," as that term is defined by N.C.G.S. § 58-70-90.

92. Credit Adjusters has attempted to collect debt in violation of N.C.G.S. § 58-70-100, in that it has, *inter alia*, engaged in annoying, abusive, and harassing conduct towards Plaintiff in connection with the collection of the Debt.

93. Credit Adjusters has attempted to collect debt in violation of N.C.G.S. § 58-70-110, in that it has, *inter alia*, falsely represented the character, extent, or amount of a debt against a consumer.

94. Credit Adjusters has attempted to collect debt in violation of N.C.G.S. § 58-70-115, in that it has, *inter alia,* collected or attempted to collect from Plaintiff charges, fees, or expenses to which it is not legally entitled.

95. As a result of Credit Adjusters' unlawful attempts to collect the Account, Plaintiff is entitled to actual and statutory damages for each violation, as well as her reasonable attorneys' fees in an amount to be proven at trial.

**COUNT V,** *in the alternative to the Count IV*
**(Credit Adjusters' Violations of the NCDCA)**

96. The foregoing allegations are incorporated by reference and realleged herein.

97. Credit Adjusters is a "debt collector" as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50(3).

98. Plaintiff is a "consumer," as that term is defined by N.C.G.S. § 75-50(3).

99. The Account is a "debt," as that term is defined by N.C.G.S. § 75-50(2).

100. Credit Adjusters has attempted to collect debt from Plaintiff in violation of N.C.G.S. § 75-52, in that it has, *inter alia*, engaged in conduct, the natural consequence of which is to oppress,

15

Case 5:19-cv-00015-FDW-DCK    Document 1    Filed 02/08/19    Page 15 of 17

harass, or abuse Plaintiff in connection with the collection of the Account.

101. Credit Adjusters has attempted to collect debt in violation of N.C.G.S. § 75-54 in that has, *inter alia,* falsely represented the character, extent, or amount of a debt against a consumer.

102. Credit Adjusters has attempted to collect debt in violation of N.C.G.S. § 75-55, in that it has, *inter alia*, collected or attempted to collect from Plaintiff charges, fees, or expenses to which it is not legally entitled.

103. As a result of Credit Adjusters' unlawful attempts to collect the Account, Plaintiff is entitled to actual and statutory damages, as well as her reasonable attorneys' fees in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays the Court for judgment as set forth below:

1. That Plaintiff have and recover actual and statutory damages arising out of Count I against Equifax pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o;

2. That Plaintiff have and recover actual and statutory damages arising out of Count II against Credit Adjusters pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o;

3. That Plaintiff recover punitive damages arising out of Count I and/or Count II from Defendants, or any of them, pursuant to 15 U.S.C. § 1681n;

4. That Plaintiff recover compensatory and statutory damages arising out of Counts II-V from Credit Adjusters pursuant to 15 U.S.C. § 1692(k), N.C.G.S. § 58-70-130 and/or N.C.G.S. § 75-56;

5. That Plaintiff recover reasonable attorneys' fees from Defendants, or any of them, incurred in this matter pursuant to 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, 15 U.S.C. § 1692(k), or as otherwise provided by law;

6. That the costs of this action be taxed to Defendants, or any of them;

7. For a trial by jury on all issues so triable; and,

8. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 8th day of February, 2019.

                                      **MAGINNIS LAW, PLLC**
*Counsel for Plaintiff*

BY: /s/ Asa C. Edwards
      ASA C. EDWARDS IV
      N.C. State Bar No. 46000
      4801 Glenwood Avenue, Suite 310
      Raleigh, North Carolina 27612
      Telephone: 919.526.0450
      Fax: 919.882.8763
      aedwards@maginnislaw.com